UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

DELORIS JACKSON                                    CASE NO. 18-10647
NATESHUS JACKSON

       DEBTORS                                      CHAPTER 13

**MEMORANDUM OPINION**

Debtors Deloris and Nateshus Jackson sought to buy a replacement vehicle using collision insurance proceeds for prepetition damage to a vehicle subject to the purchase money security interest of Neighbors Federal Credit Union.  Neighbors objected to the motion, arguing that the debtors have no interest in the insurance proceeds.

For the following reasons, the debtors' motion is denied.

FACTS AND PROCEDURAL HISTORY

A prepetition automobile accident destroyed the debtors' 2017 Nissan Altima, which was subject to a purchase money security interest in favor of Neighbors.  The debtors' proposed chapter 13 plan—not yet confirmed— provides for payments to Neighbors of $329.90 in months 8 through 60 in exchange for using $14,700 of the collision insurance proceeds to buy a replacement vehicle.[1]

Mr. Jackson drove the car as a full-time driver for food delivery service Waitr although lack of a vehicle since the accident has left him unable to continue the work full time.  On the hearing date he was sharing a car with his wife, a security guard.  He occasionally still works

---

[1] Chapter 13 Plan and Motion for FRBP Rule 3012 Valuation amended 8/24/18, P-27, scheduled for confirmation on January 30, 2019.  The debtors also propose to allow Neighbors to retain the GAP insurance proceeds on the totaled vehicle, previously applied to satisfy the balance on the original vehicle loan.  Only the proceeds of the debtors' collision coverage are at issue.

part-time for Waitr and also drives for Uber when the couple's car-sharing schedule permits.  Mr.

Jackson has been searching for a replacement car priced at around $14,000, the approximate

amount GoAuto paid under the debtors' collision coverage for the totaled Nissan Altima.[2]

Neighbors opposes the debtors' use of the collision insurance proceeds and substitution of

collateral.  It insists on retaining all the collision coverage proceeds.

Neither party disputes several key facts:

(1) The debtors granted Neighbors a purchase money security interest in the 2017 Nissan
Altima to secure a $31,437.71 loan.

(2) The accident leading to the loss occurred pre-petition[3] but the car was declared a total
loss only *after* the debtors filed bankruptcy.[4]

(3) GoAuto issued a policy that covered the car; the insurance declarations page reflects
that Neighbors holds a lien on the Nissan Altima;[5] and the insurance proceeds did not
satisfy the debtors' obligation to Neighbors.

## ANALYSIS

The debtors argue that as beneficiaries of the insurance policy they alone—and not the

bank—are entitled to the insurance payment and that as a result, the money belongs to their

bankruptcy estate.  The debtors reason that Neighbors merely has a lien on the funds that

attached to the insurance proceeds when the vehicle was declared a total loss.

---

[2]  Debtor's exhibit 1 is a GoAuto check dated June 16, 2018 for $14,876.00, payable to Neighbors "FBO DELORIS JACKSON and NATESHUS JACKSON."  A note on the bottom of the check states "For Collision total loss settlement."

[3]  The accident occurred June 4, 2018, seven days before the debtors' June 11, 2018 chapter 13 petition.

[4]  The car was declared a loss on June 14, 2018. [Neighbors' Brief in Opposition to Motion to Use Insurance Proceeds, P-54, p. 2.]

[5]  Debtors' exhibit no. 2.

Neighbors contends that as the lienholder named on the declarations page of the debtors' GoAuto insurance policy, it alone has the right to the GoAuto collision insurance proceeds because the payment was less than the balance owed Neighbors on the insured collateral.[6]

Resolution of the motion turns on two issues: (1) whether the insurance proceeds are property of the estate, and if so, (2) whether the debtors' proposal adequately protects Neighbors' interest in the proceeds.

**The Automobile Insurance Collision Proceeds Are Not Property of the Estate.**

Debtors argue that the estate's ownership of the 2017 Nissan Altima when the bankruptcy case commenced renders the insurance proceeds property of the estate, regardless of the vehicle's condition at the time of filing.[7]  They rely on Bankruptcy Code section 541[8], which provides that the estate includes any "proceeds, product, offspring, rents, or profits of or from property of the estate."[9]  The debtors reason that the estate includes proceeds of collision insurance when a claim for damage to an insured vehicle leads to payment.  Because they are beneficiaries of the GoAuto policy, the Jacksons contend that the collision insurance proceeds belong to the bankruptcy estate.[10]

---

[6] *See In re Huff*, 332 B.R. 661, 665 (Bankr. M.D. Ga. 2005): "In cases where the secured creditor was named as 'loss payee' in the insurance policy covering the secured collateral, the secured creditor was deemed to have an interest in the insurance proceeds."  (internal citations omitted).

[7] Neither party disputes that the car became property of the debtors' estate once the bankruptcy was filed.

[8] "Property of the estate" comprises "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. §541(a)(1).

[9] 11 U.S.C. §541(a)(6).

[10] *See First State Bank v. Asay*, 184 B.R. 265, 268 (Bankr. N.D. Tex. 1995) ("[T]he Debtors' insurance policy in this case relates to the Roberts Building, which is property of the estate.  Section 541 includes the insurance funds as they relate post-petition to the damaged building.  This holding comports with the congressional intent to create a broad definition of estate property….  Although the insurance policy names the bank as loss payee, the character of the funds as proceeds of the building does not change.") and *Factory Mutual Ins. Co. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, L.P.)*, 466 B.R. 841, 856 (Bankr. N.D. Tex. 2012) ("If the Builder's Risk Insurance Policy had named Big Panda as a co-insured, that would not have changed the character of the policy proceeds as property of the Debtor's estate.  This Builder's Risk Policy was essentially a property policy, pertaining to property of the

Courts focus on the insurance policy itself in analyzing ownership of insurance proceeds. "Insurance policies are property of the estate because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself.  Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate."[11]

But ownership of the *policy* does not necessarily mean that a debtor has a right to the policy *proceeds*.  The leading bankruptcy treatise explains the right to proceeds of casualty insurance:

> An illustrative example is the question of the estate's interest in proceeds of fire insurance policies that are attributable to prepetition fire damage to a building owned by the debtor.  It is well established that money payable as proceeds of a fire policy taken out before bankruptcy for the debtor's benefit does not arise from the property that was damaged, but rather from a personal contract between insurer and insured.  Therefore, the proceeds will not be awarded to a creditor holding a lien on the property unless the debtor had covenanted to insure for the benefit of the person holding the lien and, in implementation thereof, had either included a "loss payable" rider benefiting the secured party in the policy or made an outright assignment of the policy to the lienor.[12]

The debtors' insurance declarations page[13] lists Neighbors as a lienholder/additional insured on the wrecked vehicle.  The debtors argue that because the GoAuto policy did not include an explicit loss payee rider, Neighbors is not entitled to the insurance payment.  However, the policy on page 18 references the rights of an entity with a security interest in an

---

Debtor's estate, and the proceeds would essentially be a change in the form of the property of the estate.  Under the analysis of various case law, including the Fifth Circuit's *Louisiana World Exposition* case, *Edgeworth* case, and *Equinox* case, as well as the *Asay* case out of the Northern District of Texas, this court believes the Debtor would have had the right to keep and receive the proceeds of the Builder's Risk Policy, if and when the insurer had paid[.]").

[11]  *Houston v. Edgeworth (Matter of Edgeworth)*, 993 F.2d. 51, 55 (5th Cir. 1993).

[12]  5 RICHARD LEVIN & HENRY J. SOMMER, EDS., COLLIER ON BANKRUPTCY ¶ 541.10 (16th ed. 2018 update).

[13]  Debtors' exhibit 2.

Case 18-10647    Doc 71    Filed 01/16/19    Entered 01/16/19 13:50:06    Page 5 of 9

insured vehicle: "If the auto is subject to a lien or a person or entity other than you had an ownership interest in the auto at the time of the accident or loss, such person or entity may be included by us as a payee on any payment."

Further, the debtors agreed to insure Neighbors' interest in the vehicle when they borrowed the money to buy it in 2017.[14]  In *American General Fire & Cas. Co. v. Reese*,[15] the Fifth Circuit relied on Louisiana jurisprudence to equitably reform an insurance contract to name a mortgagee as loss payee where the homeowners' fire insurance policy did not name the mortgagee as loss payee:

> An insurance policy may be reformed where, because of error or mistake, the policy does not conform to the original intention of the parties…. Appellants had agreed to maintain insurance on their home for the benefit of [mortgagee] as a condition for receiving crop insurance loans worth substantially more than the value of their home.  It must be assumed that the debtors intended to carry out their legally contracted obligation.  They cannot now claim the proceeds of that insurance for themselves on the basis of their own failure to name [the lender] as mortgagee or loss payee in their policy.[16]

Thus, even if the court were to accept the debtors' argument that the general loss payee language in the GoAuto policy were insufficient to grant Neighbors an interest in the insurance proceeds, Louisiana law recognizes the right of a lienholder, such as Neighbors, to the proceeds where the

---

[14]  Plaintiffs' exhibit no. 1:  "You give us what is known as a security interest in the property [*sic*]…The security interest you give includes all accessions…It also includes any money you receive from selling the Property or from insurance you have on the property." (p. 3).  The loan documents further state "You promise to pay all taxes and fees…due on the Property, to keep the Property insured against loss and damage, and if the Property is a vehicle, to maintain liability insurance on the Property in an amount not less than the minimum amount required by law….You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so….If the Property is lost or damaged, we can use the insurance settlement to repair the Property or apply it towards what you owe.  You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy." (*Id.*)

[15]  853 F.2d 370, 374 (5th Cir. 1988).

[16]  *Id*.

Page 5 of 9

parties intended that it be paid from the proceeds. *A fortiori*, the debtors' naming Neighbors as loss payee on the declarations page supports the lender's claim to the proceeds.

Neighbors relies on the Fifth Circuit case of *Matter of Edgeworth* to argue that "[t]he overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate."[17] It concluded that Edgeworth, the debtor, had no claim to his malpractice insurance proceeds because malpractice insurance is payable to third parties injured by an insured doctor's conduct.[18] Though *Edgeworth* dealt with medical malpractice insurance, the court did not limit its holding to malpractice coverage. "Examples of insurance policies whose proceeds are property of the estate include casualty, collision**,** life, and fire insurance policies in which the debtor is a beneficiary. Proceeds of those insurance policies, *if made payable to the debtor rather than a third party such as a creditor, are property of the estate* and may inure to all bankruptcy creditors."[19]

*Edgeworth* supports the conclusion that where motor vehicle collateral is destroyed prepetition and collision insurance proceeds are insufficient to satisfy the debt to a lienholder named a loss payee on the policy, the proceeds are not property of the bankruptcy estate. Therefore, the $14,876 insurance payment from the debtors' collision coverage was less than the $29,000 owed to Neighbors so Neighbors is entitled to retain the proceeds.

---

[17] *Houston v. Edgeworth (Matter of Edgeworth)*, 993 F.2d. 51, 55-6 (5th Cir. 1993).

[18] *Id.* at 56 ("Although Dr. Edgeworth's liability policy was part of the Chapter 7 estate, the proceeds of that policy were not. Dr. Edgeworth has asserted no claim at all to the proceeds of his medical malpractice liability policy, and they could not be made available for distribution to the creditors other than victims of medical malpractice and their relatives.").

[19] *Id.* (emphasis added).

### Even if the Insurance Proceeds were Property of the Estate,
### the Debtors did not Prove that they Would Adequately Protect Neighbors' Interest.

Nor would the debtors prevail even if the collision coverage proceeds were estate property.  Bankruptcy Code section 363(c)(2) allows a debtor to use cash collateral if either (1) the secured creditor consents, or (2) the court approves the use and the debtor provides adequate protection to the secured creditor.[20]  Because Neighbors did not consent to the debtors' use of the collision insurance coverage proceeds, the debtors bore the burden of proving that their proposed use of the proceeds would adequately protect Neighbors' interest in the replacement collateral, which requires a fact intensive analysis.[21]

The debtors offered no persuasive evidence that their proposal, which shifted over time, would adequately protect Neighbors.  Their original motion[22] proposed giving Neighbors only a replacement lien with the same rank and to the same extent as that Neighbors had in the destroyed Nissan Altima: it omitted any suggestion of another form of adequate protection.[23] The debtors' later memorandum casually mentioned more adequate protection: "The debtor is

---

[20]  The debtors' motion is more appropriately considered a request to use estate property under 11 U.S.C. §363. While section 363(c)(2) as written applies to business operations of the debtor, it also has been held to apply to chapter 13 debtors.  "In general, courts have found that although the cash collateral rules are found in section 363(c), which is referred to only in conjunction with the use of property by chapter 13 business debtors, a nonbusiness debtor may use cash collateral, with the consent of the secured party or with court approval after furnishing adequate protection.  This approach recognizes that section 363(b) authorizes the use of any property of the estate, including cash collateral, after notice and a hearing.  Thus, for example, a debtor whose automobile is destroyed and who receives an insurance recovery may obtain authorization to acquire a different vehicle with the insurance proceeds, even though the proceeds are cash collateral." 3 RICHARD LEVIN & HENRY J. SOMMER, EDS., COLLIER ON BANKRUPTCY ¶363.03[4][d] (16th ed. 2018 update).

[21]  11 U.S.C. §363(p)(1); *MBank Dallas, N.A. v O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397 (10th Cir. 1987).

[22]  P-29, p.2, ¶3.

[23]  "Therefore, the debtors seek authorization from this court to sue the insurance proceeds from the 2017 Nissan Altima in the amount of $14,000 from the estimated total proceeds of $29,000 to obtain a replacement vehicle, to grant a replacement lien in favor of Neighbors Federal Credit Union and apply the remaining insurance proceeds to reduce the secured debt to Neighbors.  An estimated possible deficiency claim of $700 that may not be covered by the insurance proceeds is included in the proposed secured '910 claim' for the wrecked vehicle."  P-29, p.3, ¶6.

entitled to seek use of cash collateral such as the subject insurance proceeds, and the debtor proposed adequate protection including a request for only half the of the funds, and monthly payments with interest to pay the portion of the funds to be utilized, and subject to the secured claim of the creditor."[24]   A later filing included an even further refined proposal:

> As adequate protection for the use of about half of the insurance proceeds ($14,700.00), the debtors proposed monthly cash payments of $329.90 with interest at the rate of 6.25% to pay the present value of $14,700.00, a security interest on a replacement vehicle to be acquired, and retention by Neighbors Federal Credit Union of the GAP insurance proceeds (estimated $14,000.00) to reduce the balance of the secured claim held by Neighbors as of the petition date.[25]

None of the debtors' proposals were sufficient.

The Jacksons offered no evidence that they had plans to acquire a specific replacement auto, much less a contract to purchase a vehicle.  Mr. Jackson was still actively searching for a replacement at the time of the hearing, testifying that he had considered several cars as replacements[26] but not identifying which of the possible autos he planned to buy and offer as substitute collateral.

In addition, even had the debtors identified a specific replacement, the evidence did not establish that they could adequately protect Neighbors given the debtors' intended use of the replacement.  Vehicle values decline with time and use: excessive mileage can accelerate depreciation and reduce the value of motor vehicle collateral.  Mr. Jackson conceded at the hearing that his extensive use of the demolished vehicle making food deliveries for Waitr likely caused it to depreciate more rapidly than otherwise.  Thus, even if the debtors had selected a

---

[24]  Debtor's Memorandum Regarding Insurance Proceeds, P-43, p. 3, ¶6.

[25]  Debtor's Memorandum, P-56, p.1.

[26]  Debtors' exhibit no. 9.

replacement vehicle, the evidence supports an inference that Mr. Jackson's plan to use the replacement to resume driving full-time for Waitr would subject the replacement collateral to accelerated depreciation, much like the Nissan Altima.

In sum, the debtors have not demonstrated their ability to provide adequate protection of Neighbors' interest in the insurance proceeds.

CONCLUSION

The collision insurance proceeds were insufficient to satisfy the claim of Neighbors, the loss payee according to the insurance policy's declarations page, and were not property of the debtors' estate. Even had the proceeds been found to be property of the estate, the debtors failed to carry their burden of proving that they could adequately protect Neighbors if allowed to use the proceeds to buy a replacement vehicle.

Baton Rouge, Louisiana, January 16, 2019.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE
